**No. 25-50181**

# In the United States Court of Appeals for the Fifth Circuit

ALBERTO MARTINEZ; EMILIO ZAMORA,
*Plaintiffs-Appellees,*

*v.*

UNIVERSITY OF TEXAS AT AUSTIN; JAY HARTZELL, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## REPLY BRIEF FOR APPELLANTS


KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

TODD DICKERSON
Assistant Attorney General

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (737) 228-7289
Fax: (512) 320-0667

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS


Table of Contents ..... i

Table of Authorities ..... ii

Introduction ..... 1

Argument ..... 2

- I. Defendants' Exhibits Are Properly Before The Court. ..... 2
  - A. Defendants' exhibits are either judicially noticeable or incorporated by reference into the amended complaint. ..... 2
  - B. Defendants' exhibits can be reviewed at the 12(b)(6) stage. ..... 4
- II. Plaintiffs' Equal Protection Claims Are Properly Before The Court. ..... 5
- III. Plaintiffs Do Not Establish Hartzell's Personal Involvement. ..... 8
- IV. Hartzell's Liability Under § 1981 Was Not Clearly Established. ..... 13
- V. Plaintiffs' Claim Is For *Unintentional* Discrimination, Which Is Not Actionable. ..... 16
- VI. Plaintiffs Do Not Allege Plausible Claims For Disparate Pay, Promotions, Or Endowments. ..... 18
- VII. Plaintiffs Do Not Allege Plausible Retaliation Claims. ..... 22
- VIII. Plaintiffs' Disparate Impact Claims Against Hartzell Should Be Dismissed. ..... 24
- IX. Defendants Agree That This Court Should Not Reach Plaintiffs' Title VII Claims. ..... 24

Conclusion ..... 24

## TABLE OF AUTHORITIES

Cases

*AG Acceptance Corp. v. Veigel*,
564 F.3d 695 (5th Cir. 2009) ... 7

*Alexander v. Philip R. Taft Psy D & Assocs., P.L.L.C.*,
143 F.4th 569 (5th Cir. 2025) ... 22

*Amsel v. Tex. Water Dev. Bd.*,
464 F. App'x 395 (5th Cir. 2012) ... 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 17

*Backe v. LeBlanc*,
691 F.3d 645 (5th Cir. 2012) ... 7

*Besser v. Tex. Gen. Land Office*,
834 F. App'x 876 (5th Cir. 2020) ... 23

*Bosarge v. Miss. Bureau of Narcotics*,
796 F.3d 435 (5th Cir. 2015) ... 4, 5

*Bradley v. Allstate Ins. Co.*,
620 F.3d 509 (5th Cir. 2010) ... 6

*Bridges v. City of Bossier*,
92 F.3d 329 (5th Cir. 1996) ... 13

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ... 14

*C. A. May Marine Supply Co. v. Brunswick Corp.*,
649 F.2d 1049 (5th Cir. 1981) ... 8

*Clark Cnty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001) ... 23

*Coleman v. Dretke*,
409 F.3d 665 (5th Cir. 2005) ... 4

*Cordova v. City of Mansfield*,
No. CIVA 04-1499, 2006 WL 2513923 (W.D. La. Aug. 29, 2006) ... 23

*Cox v. Scott Cnty. Sch. Dist.*,
No. 3:18-CV-677-KHJ-LGI, 2021 WL 1207718 (S.D. Miss. Mar. 30, 2021) ... 23

*Davis v. Dallas Area Rapid Transit*,
383 F.3d 309 (5th Cir. 2004) ........................................................................ 7

*Dawson v. Gen. Motors Corp.*,
977 F.2d 369 (7th Cir. 1992) ........................................................................ 13

*Decou-Snowton v. Jefferson Par.*,
No. 24-30079, 2024 WL 4879466 (5th Cir. Nov. 25, 2024) .......................................... 23

*Escobar v. Montee*,
895 F.3d 387 (5th Cir. 2018) ........................................................................ 8

*Faraca v. Clements*,
506 F.2d 956 (5th Cir. 1975) ........................................................................ 13, 14, 15

*Felton v. Polles*,
315 F.3d 470 (5th Cir. 2002) ........................................................................ 14, 15

*Fisher v. Dallas Cnty.*,
No. 3:12-CV-3604-D, 2014 WL 4797006 (N.D. Tex. Sept. 26, 2014) ....................... 23

*Foley v. Univ. of Houston Sys.*,
355 F.3d 333 (5th Cir. 2003) ........................................................................ 1, 14

*Jenkins v. La. Workforce Comm'n*,
713 F. App'x 242 (5th Cir. 2017) .................................................................... 20

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701 (1989) ........................................................................ 14

*Johnson v. Bowe*,
856 F. App'x 487 (5th Cir. 2021) .................................................................... 17

*JSW Steel (USA) Inc. v. Nucor Corp.*,
No. 22-20149, 2025 WL 832801 (5th Cir. Mar. 17, 2025) ............................................. 4

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ........................................................................ 4

*Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*,
512 F.3d 157 (5th Cir. 2007) ........................................................................ 7

*Lawrence v. Univ. of Tex. Med. Branch at Galveston*,
163 F.3d 309 (5th Cir. 1999) ........................................................................ 7

*Mullenix v. Luna*,
577 U.S. 7 (2015) ........................................................................ 16

*Murphy v. Kellar*,
950 F.2d 290 (5th Cir. 1992) ........................................................................ 8, 9

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*,
40 F.3d 698 (5th Cir. 1994) .................. 16, 24

*Oden v. Oktibbeha Cnty., Miss.*,
246 F.3d 458 (5th Cir. 2001) .................. 14, 15

*Payne v. City of Houston, Tex.*,
No. 24-20150, 2025 WL 999085 (5th Cir. Apr. 3, 2025) .................. 3

*Pearson v. Callahan*,
555 U.S. 223 (2009) .................. 7

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
9 F.4th 247 (5th Cir. 2021) .................. 4

*Schoonover v. Clay Cnty. Sheriff's Dep't*,
No. 20-1680, 2023 WL 4026091 (4th Cir. June 15, 2023) .................. 13

*Shackelford v. Deloitte & Touche, LLP*,
190 F.3d 398 (5th Cir. 1999) .................. 20

*Taylor v. United Parcel Service, Inc.*,
554 F.3d 510 (5th Cir. 2008) .................. 20

*Thompson v. Steele*,
709 F.2d 381 (5th Cir. 1983) .................. 13

*United States v. Am. Commercial Lines, L.L.C.*,
759 F.3d 420 (5th Cir. 2014) .................. 7

*United States v. Johnson*,
943 F.3d 214 (5th Cir. 2019) .................. 13

*Whitley v. Hanna*,
726 F.3d 631 (5th Cir. 2013) .................. 11

*Whitten v. Clarke*,
41 F.4th 1340 (11th Cir. 2022) .................. 7

*Zandvakili v. Univ. of Cincinnati*,
No. 23-3396, 2024 WL 278548 (6th Cir. Jan. 25, 2024) .................. 16

*Zarnow v. City of Wichita Falls, Tex.*,
500 F.3d 401 (5th Cir. 2007) .................. 24

Statutes

42 U.S.C. § 1981 .................. passim

42 U.S.C. § 1983 .................. passim

42 U.S.C. § 2000e .................. passim

<u>Rules</u>

Fed. R. Civ. P. 12(b)(6) ........................................ 4, 7, 17

<u>Other Authorities</u>

*All Policies and Procedures*, UNIV. OF TEXAS AT AUSTIN ........................................ 4

*Regents' Rules and Regulations*, UNIV. OF TEXAS SYSTEM........................................ 4

## INTRODUCTION

Plaintiffs' arguments on response are flawed and do nothing to overcome Jay Hartzell's qualified immunity. Below are five of the main reasons why.

First, Plaintiffs must establish *intentional* discrimination to prevail against Hartzell. But in reports they drafted and incorporated into their pleadings, they ascribed the challenged pay, promotion, and endowment issues to *unintentional* factors ("pay compression" and "Hispanopia"). Based on these reports, it is not plausible that intentional discrimination was at play here. And Plaintiffs' vague and conclusory "comparator" allegations—which are often contradicted by their prior statements and other documents—do not change this conclusion.

Second, Plaintiffs cite 24 paragraphs from their amended complaint to try to show Hartzell's overt personal involvement. Yet these allegations merely concern (1) acts by *other* officials from the University of Texas at Austin ("UT Austin") and (2) events that occurred before Hartzell's appointment as UT Austin's President. Also, Plaintiffs do not show that the "deliberate indifference" and "ratification" theories of liability plausibly apply here.

Third, Plaintiffs cite no caselaw clearly establishing that Hartzell could be individually liable under 42 U.S.C. § 1981. They largely rely on this Court's *Foley* decision. But they do not, and cannot, rebut Defendants' arguments showing *Foley's* pertinent analysis to be nonbinding dicta.

Fourth, concerning their retaliation claims, causation is lacking as the alleged pay,

promotion, and endowment issues occurred both before and after Plaintiffs' protected complaints. Plaintiffs try to shift focus by pointing to Hartzell's disbanding of a UT Austin committee. This effort fails, however, because (1) Plaintiffs did not identify this as a retaliatory act in their amended complaint and (2) the disbandment occurred six months after their first protected complaint to Hartzell, which is too long to establish causation via temporal proximity.

Finally, Plaintiffs contend that Defendants waived any arguments against their equal protection theory of recovery by not raising the issue before the district court or on appeal. Yet Plaintiffs' § 1981 and equal protection theories turn on the same facts and elements and are brought via the same statute (42 U.S.C. § 1983). Thus, Defendants sufficiently briefed the "equal protection" theory when they explained why Plaintiffs' effectively identical § 1981 theory should be dismissed. And this Court's exception to finding a waiver is broad enough to cover the situation here.

## ARGUMENT

### I. Defendants' Exhibits Are Properly Before The Court.

#### A. Defendants' exhibits are either judicially noticeable or incorporated by reference into the amended complaint.

Plaintiffs argue that some of Defendants' exhibits are not "central" to their claims, although they do not target any specific exhibits.[1] As shown below, Defendants' exhibits are properly before the Court.

[1] ECF 32-2, 12–14.

**Exs. 1, 3:** These are the 2018 and 2019 reports Plaintiffs drafted.[2] Plaintiffs cited these reports (1) as evidence that Hispanic professors at UT Austin were paid less than white professors[3] and (2) as protected discrimination complaints for their retaliation claims.[4] Thus, these reports are referenced in Plaintiffs' amended complaint and central to their claims.[5]

**Ex. 2:** This exhibit is irrelevant to Defendants' appeal.[6]

**Exs. 4–8:** These exhibits are from The University of Texas System's ("UT System") Board of Regents Rules and UT Austin's Handbook of Operating Procedures ("HOP").[7] Plaintiffs cited these documents as evidence of (1) facially neutral policies to support their disparate impact and class claims[8] and (2) Hartzell's personal involvement.[9] Thus, these documents are incorporated by reference.[10] They are also judicially noticeable as they are publicly available on UT System's and UT Austin's

---

[2] ROA.908–1095, 1132–51.
[3] ROA.457–59, ¶¶ 58–61, 67–70; ROA.462, ¶ 88; ROA.476, ¶ 169.
[4] ROA.463, ¶ 93; ROA.485, ¶¶ 221–23; ROA.488, ¶¶ 239–41.
[5] *See Payne v. City of Houston, Tex.*, No. 24-20150, 2025 WL 999085, at *2 (5th Cir. Apr. 3, 2025) (explaining that a document is likely central to a plaintiff's claims if (1) "the plaintiff substantially relies on [it] to prove their claims" or (2) "it is necessary to establish an element of one of the plaintiff's claims") (quotations omitted).
[6] *See* ROA.1096–1131.
[7] ROA.1152–74.
[8] ROA.453–57, ¶¶ 35–56; ROA.472–84, ¶¶ 155–56, 162, 169–70, 176–83, 189–90, 204–10.
[9] ROA.454–55, ¶¶ 37–38, 42, 47–48, 52; ECF 32-2, 24, 42–44.
[10] *See Payne*, 2025 WL 999085, at *2.

websites.[11]

**Ex. 9:** This is UT Austin's 2023–24 Guidelines for Annual Review of Faculty.[12] Plaintiffs moved to strike this (and only this) exhibit.[13] The district court denied the motion, finding that Ex. 9 was judicially noticeable as it was "publicly available on UT Austin's website."[14]

### B. Defendants' exhibits can be reviewed at the 12(b)(6) stage.

Plaintiffs contend that any argument based on Defendants' exhibits is inappropriate at the 12(b)(6) stage.[15] Yet judicially noticeable matters and documents incorporated by reference can clearly be considered when reviewing a 12(b)(6) motion to dismiss.[16] This Court has even recognized that "when there is a conflict between allegations in a pleading and exhibits, it is well-settled that the exhibits control."[17]

*Bosarge* is not to the contrary. There, the plaintiff "borrow[ed] a number of facts from [two] agents' affidavits, while disputing other claims made in these affidavits."[18]

---

[11] *See Regents' Rules and Regulations*, UNIV. OF TEXAS SYSTEM, https://www.utsystem.edu/offices/board-of-regents/regents-rules-and-regulations; *All Policies and Procedures*, UNIV. OF TEXAS AT AUSTIN, https://secure2.compliancebridge.com/utexas/public/index.php?fuseaction=app.main&reset=1; *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of a governmental website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (same).

[12] ROA.1175–78.

[13] ROA.1185–87.

[14] ROA.1496–97. During the motion to dismiss briefing, the 2023–24 guidelines were publicly available at https://provost.utexas.edu/the-office/faculty-affairs/faculty-evaluation/, via the link "Guidelines for Annual Review of Faculty." ROA.875 n.37. They have since been replaced by the 2024–25 guidelines.

[15] ECF 32-2, 12; *see also id.* at 14 n.2.

[16] *See Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021).

[17] *JSW Steel (USA) Inc. v. Nucor Corp.*, No. 22-20149, 2025 WL 832801, at *5 (5th Cir. Mar. 17, 2025).

[18] *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

This Court found the affidavits incorporated by reference but decided that they "should not control to the extent that they conflict with [the plaintiff's] allegations."[19]

This situation is far afield from *Bosarge*. Plaintiffs do not allege facts directly contradicting UT Austin's and UT System's rules and policies. And their main complaint concerns Defendants' use of the 2018 and 2019 reports *that Plaintiffs wrote*.[20] Plaintiffs cite no caselaw that would require this Court to ignore their prior statements about the pay, promotion, and endowment issues challenged here.

## II. Plaintiffs' Equal Protection Claims Are Properly Before The Court.

Plaintiffs assert two counts against Hartzel, each of which: (1) is described as a singular cause of action;[21] (2) relies on § 1981 and the Equal Protection Clause without identifying any distinction between the two theories;[22] (3) is brought under the same statute (42 U.S.C. § 1983);[23] (4) uses identical language to describe the undifferentiated legal right Plaintiffs assert;[24] and (5) turns on the same set of factual allegations.[25] Plaintiffs, for the first time, now contend that their two counts against Hartzell each contain two "distinct" claims (§ 1981 and equal protection), and that Defendants waived

[19] *Id.*
[20] ROA.457, ¶¶ 57–58; ROA.459, ¶ 67; ROA.908, 1135.
[21] ROA.486, ¶ 226 ("*This cause of action* is in addition to or in the alternative to the other claims in this complaint.") (emphasis added); ROA.487, ¶ 236 (same).
[22] ROA.486–88, ¶¶ 226–43.
[23] ROA.486–88, ¶¶ 226–43.
[24] ROA.486, ¶ 228 ("The Equal Protection clause of the Fourteenth Amendment to the United States Constitution *and 42 U.S.C. § 1981* require that no U.S. citizen may be denied equal access . . . .") (emphasis added); ROA.488, ¶ 238 (similar).
[25] ROA.486–88, ¶¶ 226–43.

the equal protection issue as they did not argue it separately.[26]

There is no basis for finding a waiver here. First, Plaintiffs made no mention of a distinct equal protection claim when responding to Defendants' motion to dismiss *all* their claims.[27] And they made numerous statements in their motion to dismiss response indicating that they were *only* asserting Title VII and § 1981 claims:

- "Plaintiffs' retaliation claims are brought *under both Title VII and Section 1981*."[28]
- "However, Dr. Zamora does assert failure to promote and pay claims relating to endowments *under Section 1981*."[29]
- "Drs. Martinez and Zamora have also pled sufficient facts of disparate treatment for their individual claims *under Title VII and 1981*, class claims under Title VII, as well as individual retaliation claims *under Title VII and 1981*."[30]
- "With respect to the Plaintiffs' claims relating to History Department Chair and Assistant Chair positions, those claims for Drs. Martinez and Zamora also *fall under section 1981, not Title VII*."[31]

Second, an issue is not waived if the briefing is "sufficient" to permit a court to rule on it.[32] Defendants adequately briefed Plaintiffs' § 1981 claims at the trial court level and on appeal;[33] that is not in dispute. Plaintiffs' equal protection claims turn on

---

[26] ECF 32-2, 29.
[27] *See* ROA.860–907, 1259–1321.
[28] ROA.1293 (emphasis added).
[29] ROA.1291 (emphasis added).
[30] ROA.1260 (emphasis added).
[31] ROA.1292 (emphasis added).
[32] *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 519 (5th Cir. 2010).
[33] *See* ROA.860–907, 1397–45; ECF 27.

the same facts and elements as their § 1981 claims.[34] Thus, Defendants' § 1981 briefing is sufficient to show the defects in Plaintiffs' identical equal protection claims.

Finally, an unbriefed issue is not found to be waived "when the issue involved is a pure question of law and a miscarriage of justice would result from [the Court's] failure to consider it."[35] This exception applies here. Whether a complaint should be dismissed under 12(b)(6) is a pure question of law.[36] And a miscarriage of justice would result from not considering Plaintiffs' equal protection claim. The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."[37] Refusing to address Plaintiffs' equal protection claim would not resolve Hartzell's qualified immunity "at the earliest possible stage." And such a decision would clash with a main purpose of this doctrine, which is "to protect public officials from expensive, intrusive discovery until and unless the requisite showing overcoming immunity is made."[38] Thus, there is no ground for finding a waiver here, and even if there were, this Court could still properly rule on all of Plaintiffs' claims against

---

[34] *See* ROA.486–88, ¶¶ 226–43; *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) ("Employment discrimination claims brought under 42 U.S.C. §§ 1981, 1983, and 2000d are analyzed under the evidentiary framework applicable to claims arising under Title VII . . . ."); *see also Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) ("[T]he inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII.") (quotations omitted); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) ("The summary judgment analysis is the same for claims of race discrimination under Title VII, § 1981, and § 1983.").

[35] *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (quotations omitted).

[36] *United States v. Am. Commercial Lines, L.L.C.*, 759 F.3d 420, 424 (5th Cir. 2014); *Whitten v. Clarke*, 41 F.4th 1340, 1347–48 (11th Cir. 2022).

[37] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quotations omitted).

[38] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Hartzell.[39]

## III. Plaintiffs Do Not Establish Hartzell's Personal Involvement.

**Overt Participation:** Plaintiffs argue that Hartzell was overtly and personally involved in the alleged pay, promotion, and endowment disparities. They cite paragraphs 63–86 of their amended complaint to support this point.[40] But these allegations all concern *other* UT Austin officials and events that happened *before* Hartzell was appointed as UT Austin's President.[41] Thus, they do not establish Hartzell's overt involvement in the alleged unlawful acts.[42]

Plaintiffs also try to show Hartzell's personal involvement via his authority to approve, deny, or modify a subordinate's recommendation regarding a professor's salary rates or promotion.[43] This goes nowhere.

Starting with promotions, Plaintiffs allege that either the History Department or

---

[39] While Plaintiffs do not raise the point, Defendants note that their notice of appeal specifies a challenge regarding Plaintiffs' § 1981 claims, but not their newfound "distinct" equal protection claims. ROA.2015. Defendants' notice should be read as also designating a challenge to Plaintiffs' equal protection claims as (1) it is identical to their § 1981 claims and (2) the district court did not differentiate between Plaintiffs' equal protection and § 1981 claims when it ruled on Defendants' motion to dismiss. *See* ROA.1516–24; *cf.* Fed. R. App. P. 3(c)(6). Also, this Court's jurisdictional exceptions for claims that (1) are "inextricably entwined" or (2) would "further the purposes of officer-immunities by helping the officer avoid trial" apply here for the reasons discussed above. *See Escobar v. Montee*, 895 F.3d 387, 392–93 (5th Cir. 2018); *C. A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir. 1981).

[40] ECF 32-2, 37 (citing ROA.458–62, ¶¶ 63–86).

[41] *See* ROA.458–62, ¶¶ 63–86; *see also* ROA.462, ¶ 87 (stating that Hartzell was appointed as UT Austin's Interim President in or around July 2020).

[42] *See Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992) (stating that a plaintiff must "specify the personal involvement of each defendant in a cause of action under § 1983" and "cannot make generalized allegations").

[43] ECF 32-2, 42–45.

"UT" rejected them for the open positions.[44] The former would not include Hartzell, and the latter is too generalized to establish his personal involvement.[45] Also, HOP 2-2160 shows that UT Austin's President only gets involved after a recommendation for promotion is forwarded to their office.[46] Yet Plaintiffs do not allege they were ever recommended for promotion, as needed to trigger Hartzell's review under HOP 2-2160. Indeed, Plaintiffs admit that the History Department's "search committee" initially "assess[es] the applicants" for promotion.[47] They assert no facts showing that their applications made it past this preliminary stage.

Moving on, Plaintiffs do not allege that Hartzell reviewed any recommendations a subordinate employee made regarding Plaintiffs' pay. They assume that Hartzell reviews *every* conceivable salary decision, even if a professor's pay is unchanged year-to-year. But that is not what HOP 2-2160 says. Rather, the policy states that a President reviews recommendations regarding "salary rates," a term that is used synonymously with "salary advancement."[48] Plaintiffs do not allege that they were recommended for "salary advancement" during Hartzell's tenure.

---

[44] ROA.469–72, ¶¶ 131, 139, 141, 147.
[45] *See Murphy*, 950 F.2d at 292 n.7.
[46] ROA.1165–67.
[47] ROA.469, ¶ 134; *see also* ROA.469–71, ¶¶ 130, 144–45, 147.
[48] ROA.1166 ("The president's decisions with regard to *salary advancement* . . . are subject to confirmation by the Chancellor of The University of Texas System and the Board of Regents. No commitment regarding *salary rates* . . . may be made without the approval of the president and subsequent confirmation by the Chancellor of the University System and the Board of Regents.") (emphasis added); *see also* ROA.1165 ("Recommendations for *salary advancement*, promotion in rank, tenure, renewal of appointment, or non renewal of appointment shall be made on the basis of an annual evaluation of each faculty member . . . .") (emphasis added).

Even if Hartzell's review covered decisions to keep a professor's pay rate the same, he still was not sufficiently involved to be liable here. Plaintiffs do not allege that he *denied* any recommendations regarding their pay. For *approval* decisions, this is analyzed under a "ratification" theory, which Plaintiffs do not meet.[49]

Last up are endowments. Plaintiffs talk out of both sides of their mouth on this point. They say endowments are "extremely important in academia" and that this Court should thus "infer[] that Hartzell was personally involved" in the unidentified "discriminatory endowment decisions."[50] Yet in the *very same paragraph*, Plaintiffs admit that Hartzell "delegated" his authority in this area to the Executive Vice President and Provost."[51] Further, Plaintiffs admitted in their 2019 report that "*[d]eans and department chairs* . . . appoint faculty to endowed Chairs and Professorships."[52] For the reasons above, Plaintiffs do not plausibly allege Hartzell's overt personal involvement in the alleged pay, promotion, and endowment issues in question here.

**Deliberate Indifference:** Plaintiffs invoke the deliberate indifference theory of liability, arguing that Hartzell did not investigate or act on concerns of discrimination raised by Hispanic faculty.[53] But they cite no allegations showing that Hartzell was aware of any promotion or endowment disparities, as needed to establish his deliberate

---

[49] *See* ECF 27, 35.
[50] ECF 32-2, 44.
[51] *Id.* (citing ROA.455, ¶ 48).
[52] ROA.936 (emphasis added).
[53] ECF 32-2, 39–42.

indifference on these issues.[54]

Regarding pay, Plaintiffs cite Hartzell's decision to disband the Equity Review Process Consultative Committee ("ERPCC") as evidence of his refusal to investigate the alleged pay disparities for Hispanic professors.[55] This is not enough.

First, Plaintiffs' amended complaint shows that the *ERPCC*, not *Hartzell*, was the one refusing to investigate pay disparities. Plaintiffs allege that the ERPCC was created to "advise on how to use the remaining equity funds allocated by former Provost McInnis," which was $1.3 million.[56] They state that Hartzell "selected or approved" the outside contractor the ERPCC recommended to analyze pay disparities,[57] but they do not allege that he delayed in giving his approval. Despite having full authorization from Hartzell, Plaintiffs admit that the ERPCC operated for *three months* prior to its disbandment without "performing any substantive work" on its important assignment.[58] Given these facts, Hartzell cannot plausibly be faulted for the ERPCC's (or its hand-picked contractor's) failure to timely investigate pay disparities.

Second, the ERPCC was tasked with assessing salary inequities in general.[59] So

[54] *See* ROA.462–65, ¶¶ 87–89, 94, 102–06 (stating only that Hartzell was aware of: (1) a July 27, 2020 report regarding funding for certain academic programs; (2) an August 3, 2020 complaint regarding pay discrimination; and (3) a November 1, 2021 report about pay discrimination); *see also Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (explaining that the defendant's "actual knowledge is critical" to a deliberate indifference inquiry).
[55] ECF 32-2, 41–42.
[56] ROA.462–463, ¶¶ 84, 87, 96.
[57] ROA.464, ¶ 98.
[58] ROA.463–64, ¶¶ 96, 100.
[59] ROA.463, ¶ 96.

the disbanding of this committee would impact all underpaid professors equally. Thus, this act is not reflective of Hartzell's alleged indifference towards pay issues concerning *Hispanic* professors.

Finally, Plaintiffs admit that Hartzell's administration distributed $306,000 in raises to Hispanic professors.[60] Again, this represents 18% of the total pool of equity funds distributed ($1.7 million); a percentage more than double the percentage of Hispanic professors in UT Austin's workforce (7%).[61] On top of this, Plaintiffs acknowledge that Hartzell and other UT Austin officials "conduct[ed] university-wide reviews and studies of compensation for faculty, including Hispanic faculty, and ma[de] alleged university-wide compensation decisions, adjustments, and raises."[62] This is hardly evidence of deliberate indifference.

**Waiver:** Plaintiffs contend that Defendants waived their deliberate indifference and ratification arguments by not raising these points before the district court.[63] Yet they do not assert that Defendants waived their arguments about Hartzell's lack of personal involvement. They *cannot* make this argument, as Defendants pressed this issue

---

[60] ECF 32-2, 40.

[61] ECF 27, 34–35. Plaintiffs say that only "approximately 10 percent" of the equity raises went to Hispanic faculty. ECF 32-2, 40. But this calculation is based on the original $3 million pool for equity raises, not the amount that was actually distributed towards pay raises ($1.7 million). ROA.462, ¶¶ 84, 87. Based on their alleged figures, Plaintiffs got the math right in the amended complaint. ROA.462, ¶ 88 (stating that "82% of the $1.7 million" in raises went to non-Hispanic faculty).

[62] ROA.467, ¶ 120.

[63] ECF 32-2, 29–30.

below,[64] and the trial court found Defendants' briefing sufficient to rule on the question.[65]

Defendants' deliberate indifference and ratification points are mere variations of their larger, properly preserved, point about Hartzell's lack of personal involvement.[66] Courts routinely decline to find a waiver in similar contexts.[67] This Court should do the same.

In sum, this Court should find that Plaintiffs do not plausibly establish Hartzell's personal involvement. This dooms Plaintiffs' § 1981 and equal protection claims. This is because Plaintiffs brought both claims via § 1983, and "[p]ersonal involvement is an essential element" to a § 1983 claim.[68]

## IV. Hartzell's Liability Under § 1981 Was Not Clearly Established.

Plaintiffs do not show that Hartzell's liability under § 1981 was clearly established. There are four reasons why.

First, Plaintiffs argue that *Faraca* established "that public employees can be

---

[64] *See, e.g.*, ROA.1405 ("§ 1983 plaintiffs must . . . plead and prove which actions of the *individual* defendant caused the harm. Plaintiffs have not alleged any facts showing that the President was *personally involved* in any of the acts at issue. The argument that he 'sets' or 'decides' on raises *fails to establish his involvement* satisfactorily, as explained above.") (emphasis added) (cleaned up); *see also* ROA.895, 897, 1397.

[65] *See* ROA.1523 ("Plaintiffs have alleged sufficient involvement by President Hartzell for § 1983 purposes."); *see also* ROA.1520, 1523–24.

[66] *See* ECF 27, 31–35 (explaining how deliberate indifference and ratification connect to a § 1983 personal involvement analysis).

[67] *See, e.g.*, *United States v. Johnson*, 943 F.3d 214, 224 n.2 (5th Cir. 2019); *Bridges v. City of Bossier*, 92 F.3d 329, 335 n.8 (5th Cir. 1996); *Schoonover v. Clay Cnty. Sheriff's Dep't*, No. 20-1680, 2023 WL 4026091, at *2 n.3 (4th Cir. June 15, 2023); *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 n.* (7th Cir. 1992).

[68] *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

individually liable under § 1981."[69] But in *Jett*, the Supreme Court overturned *Faraca* when it held that a state actor cannot be personally liable under § 1981 alone and that such a claim must be brought through § 1983.[70] *Faraca* did not clearly establish Hartzell's individual liability as it did not analyze how personal liability is assessed in a § 1981 claim against a state employee brought under § 1983.[71]

On response, Plaintiffs contend that *Jett* is distinguishable as it involved "municipal entities," not "individual defendant[s]."[72] This argument runs counter to *Felton*, which found that *Jett's* holding extends to § 1981 claims against state employees in their individual capacities.[73]

Second, Plaintiffs cite *Foley* to show that state employees can be individually liable under § 1981 when they are "essentially the same" as their employers.[74] Defendants' brief detailed why *Foley's* "essentially the same" analysis was nonbinding dicta.[75] Plaintiffs do not, and cannot, rebut Defendants' arguments on this point.

Third, Plaintiffs try to distinguish *Oden* on grounds that they "are only pursuing their claims against Hartzell in his individual capacity."[76] They omit that *Oden's* relevant analysis also concerned a plaintiff's *individual capacity* claims against a government

[69] ECF 32-2, 56.
[70] *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989).
[71] *See Faraca v. Clements*, 506 F.2d 956, 958–60 (5th Cir. 1975).
[72] ECF 32-2, 58–59.
[73] *Felton v. Polles*, 315 F.3d 470, 481–83 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).
[74] ECF 32-2, 56–58 (citing *Foley v. Univ. of Houston Sys.*, 355 F.3d 333 (5th Cir. 2003)).
[75] ECF 27, 43–47.
[76] ECF 32-2, 60.

defendant.[77] And this Court still found that the proper defendant in a failure-to-promote claim under § 1981 was the "government employer in his official capacity," not a government *employee* in his *individual capacity*.[78]

Plaintiffs also argue that *Oden* is irrelevant as (1) it did not involve a claim brought under § 1983 and (2) it involved an elected official.[79] Plaintiffs' first point is odd as they cite *Faraca* as one of the two pillars of their "clearly established" argument, and it also involved a standalone § 1981 claim. If *Oden* is irrelevant, then so too is *Faraca*.

On the second point, *Oden* did not specify that its holding applies only to elected officials. Rather, the Court described its ruling more broadly, stating that it covers "the liability of *local government officials* for their decisions affecting municipal employment contracts."[80] Also, *Oden* based its decision largely on the absence of individual liability under Title VII, a rationale applicable to elected and non-elected officials alike.[81] Further, Plaintiffs do not explain *why* § 1981 liability should turn on an official's elected status.

Finally, Plaintiffs contend that *Felton* did not decide "whether and under what circumstances a § 1981 claim could be brought against an individual defendant."[82] But

---

[77] *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 464–65 (5th Cir. 2001).
[78] *Id.* at 461–62, 464–65; *see also Felton*, 315 F.3d at 481 ("*Oden* speaks of discrimination in the terms and conditions of a *municipal* employment contract; we see no reason not to extend its holding to discrimination in the terms and conditions of *state* employment contracts.").
[79] ECF 32-2, 59–60.
[80] *Oden*, 246 F.3d at 465 (emphasis added).
[81] *Id.* at 464–65.
[82] ECF 32-2, 61–62.

*Felton* cast doubt on what conduct is sufficient to trigger individual liability under § 1981.[83] This is relevant as the "dispositive question" for a qualified immunity analysis is whether the violative nature of *particular* conduct is clearly established."[84] Plaintiffs cite no caselaw clearly establishing Hartzell's individual liability under § 1981 given that he had little to no involvement in the alleged unlawful acts.

## V. Plaintiffs' Claim Is For *Unintentional* Discrimination, Which Is Not Actionable.

Plaintiffs' statements in their 2018 and 2019 reports confirm that they are complaining about *unintentional* discrimination, which is not cognizable under § 1981, § 1983, or the Equal Protection Clause.[85] Plaintiffs' arguments in response do not change this conclusion.

**Plaintiffs' 2018 Report:** In this report, Plaintiffs stated that "pay compression" (aka "salary inversion") is a main cause of salary inequities.[86] Their comments show that a market-force-based phenomenon, not intentional discrimination, was the most likely cause of the pay disparities complained of here.[87]

Plaintiffs now ask this Court not to consider their prior admissions, claiming this

[83] ECF 27, 41–42.
[84] *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotations omitted); *see also* ECF 27, 30–31 (citing cases applying this, or a similar, principle to qualified immunity issues concerning a defendant's level of involvement in the alleged unlawful act).
[85] ECF 27, 48–50; *see Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 715 (5th Cir. 1994) (finding that § 1981 and § 1983 claims require intentional discrimination).
[86] ROA.1132–33, 1150.
[87] *See Zandvakili v. Univ. of Cincinnati*, No. 23-3396, 2024 WL 278548, at *8 (6th Cir. Jan. 25, 2024) (explaining the concept of "salary inversion" and finding that "Title VII is not the proper forum to address this known phenomenon").

would be inappropriate at the 12(b)(6) stage.[88] But Plaintiffs incorporated the 2018 report into their amended complaint.[89] Thus, this Court can consider Plaintiffs' statements in this report when assessing the plausibility of their claims.[90]

**Plaintiffs' 2019 Report:** Plaintiffs also try to discount their statements in the 2019 report that attributed the alleged disparities to a different unintentional cause ("Hispanopia"). For instance, they call the report "a red herring" largely because it did not state "that all discrimination against Hispanics at UT is due **only** to unconscious bias."[91] But this is not the right standard. It is a plaintiff's burden to plead a plausible claim; it is not the defendant's duty to affirmatively disprove that claim on a 12(b)(6) motion.[92] And Plaintiffs' admission in the 2019 report that the alleged disparities were due to *unconscious* biases undercuts the plausibly of their *intentional* discrimination claims.

Plaintiffs also distort their statements in the 2019 report. They contend that the report used the term Hispanopia "to name discrimination against Hispanics."[93] They omit that the report was clearly referring to unintentional "[s]tructural discrimination."[94] Indeed, Plaintiffs' report stated that "the *most common discrimination against Hispanics* is not a phobia, a hatred, or an opposition" but rather "a kind of partial blindness, a dismissive

[88] ECF 32-2, 49–52.
[89] *Supra*, 2–5.
[90] *See, e.g.*, *Johnson v. Bowe*, 856 F. App'x 487, 491 (5th Cir. 2021) (rejecting an argument similar to Plaintiffs').
[91] ECF 32-2, 62–66.
[92] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[93] ECF 32-2, 62 (emphasis and quotations omitted) (citing ROA.978).
[94] *See* ROA.977–78.

gesture, an inability to really see and respond to Hispanic persons in present company."[95] It was for this form of discrimination that the report "coin[ed] the word *Hispanopia*."[96]

Plaintiffs employ the same tactic regarding the report's reference to "racism." They argue this shows that the report discussed intentional discrimination.[97] They ignore that, while the report said racism *can* be intentional, it emphasized that "*a far more often racism* in the United States is a structural, traditional system *that functions irrespective of any individuals' awareness of it*."[98] Plaintiffs do not plausibly establish intentional discrimination here given their admission that unintentional "structural discrimination" is a "far more" likely cause for the alleged disparities.

Finally, Plaintiffs argue that they need not show "[v]irulent and blatant animosity."[99] This is irrelevant. Plaintiffs acknowledge that "[p]rohibited discrimination occurs when an employer intentionally treats a person worse because of a protected characteristic."[100] And as discussed above, they do not plausibly plead that the alleged pay, promotion, and endowment disparities were the result of *intentional* discrimination.

## VI. Plaintiffs Do Not Allege Plausible Claims For Disparate Pay, Promotions, Or Endowments.

Plaintiffs do not allege plausible claims against Hartzell under any theory separate

---

[95] ROA.978 (emphasis added and omitted).
[96] ROA.978.
[97] ECF 32-2, 63–64.
[98] ROA.978.
[99] ECF 32-2, 64–66.
[100] *Id.* at 65 (quotations omitted).

from the "intentional discrimination" theory discussed above. Defendants explained why in their opening brief.[101] This section focuses on the main flaws in Plaintiffs' response on this point.

**The "Summary Judgment" Issue:** Plaintiffs argue that Defendants made improper "summary judgment" arguments when they used exhibits to help show that Plaintiffs' claims were not plausible.[102] As noted above, these exhibits all consist of judicially noticeable documents or documents incorporated by reference into Plaintiffs' amended complaint.[103] Thus, they can be considered here.

**The "Equity Raise" Issue:** Plaintiffs cite their allegedly superior "publication records" as evidence that they were underpaid.[104] Yet they do not dispute that (1) UT Austin's History Department used an objective process to award raises for a professor's publications and (2) they received the amounts they deserved for their publications under this process. Instead, Plaintiffs argue that the History Department can also award "equity raises," which are more subjective.[105] But they allege no facts showing that their comparators received greater "equity raises" than they did.

**The "General Statistics" Issue:** Plaintiffs argue that "[t]he striking university wide disparities in pay between Hispanic and White professors support the 'ultimate

---

[101] ECF 27, 48–60.
[102] ECF 32-2, 49–51.
[103] *Supra*, 2–5.
[104] ROA.466, ¶¶ 114, 116.
[105] ECF 32-2, 50.

element' that Plaintiffs were discriminated against because they are Hispanic."[106] This is wrong. In *Taylor v. United Parcel Service, Inc.*, this Court found that an "individual plaintiff pursuing an *individual* [disparate pay] claim may not rely on the type of pattern-or-practice evidence that is acceptable in class action suits alleging similar conduct, such as general statistical evidence."[107] Rather, to prove such a claim, the plaintiff "must present *prima facie* evidence that his pay was lower than *specific* employees who are not members of the protected class."[108] Plaintiffs did not do that here.

**The "Promotions" Issue:** For Zamora, Plaintiffs argue that his failure to apply to the positions in question should be overlooked as "the white applicants who were selected also did not apply."[109] Yet they cite no caselaw finding this to be an exception to the rule that a plaintiff must apply to the position sought to sustain a failure-to-promote claim.[110] And their argument does not fall under the recognized "futile gesture" exception, which covers situations where "the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination."[111]

For both Martinez and Zamora, Plaintiffs argue that the History Department selected candidates who did not apply for the position in question, which supposedly violated its "application, evaluation, recommendation, and selection processes."[112] But

---

[106] *Id.* at 37–38.
[107] 554 F.3d 510, 523 (5th Cir. 2008).
[108] *Id.*
[109] ECF 32-2, 55.
[110] *See Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244–45 (5th Cir. 2017).
[111] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999).
[112] ECF 32-2, 54–55; ROA.468–69, ¶¶ 125–33.

Plaintiffs admit this alleged policy departure impacted *all* applicants for the open position.[113] As previously explained, a policy violation is not evidence of discrimination when the plaintiffs were treated *the same* as all other applicants.[114]

**The "Lack of Knowledge" Issue:** Plaintiffs argue that "it would be impossible" for them to allege specifics about the supposed pay and endowment disparities as these "facts [are] peculiarly within the knowledge of [UT Austin]."[115] This is transparently false. Plaintiffs' *entire case* rests on them having "reviewed salary and performance information"[116] and using this information to generate "clear statistical evidence"[117] of disparities between Hispanic and non-Hispanic professors at UT Austin. Further, reading the 2018 and 2019 reports will confirm that Plaintiffs had access to *significant* information regarding individual professors' pay,[118] promotions,[119] and endowments.[120]

Despite this abundance of data, Plaintiffs still cannot identify *any* material facts about their comparators.[121] Put simply, Plaintiffs are merely guessing that these never-

[113] ROA.469, ¶ 133 ("Unlike Martinez *and the other applicants*, Berry had not gone through the application, interview, evaluation, recommendation, and selection processes as an applicant.") (emphasis added).
[114] *See* ECF 27, 59.
[115] ECF 32-2, 48, 53–54.
[116] ROA.459, ¶ 67; *see also* ROA.457, ¶ 59.
[117] ROA.475–76, ¶ 169; *see also* ROA.457, ¶ 59; ROA.459–60, ¶¶ 67–77; ROA.464–65, ¶¶ 102–06; ROA.476, ¶ 170; ROA.483, ¶ 209.
[118] *See, e.g.*, ROA.918–20, 928–32, 938–55, 997–1020, 1143–46.
[119] *See, e.g.*, ROA.923–27, 956–72, 1139–41.
[120] *See, e.g.*, ROA.936, 1021–40.
[121] *See* ROA.466, ¶¶ 114, 116; ROA.472, ¶ 154.

named individuals were treated more favorably despite being less qualified. Their "speculative [and] conclusory statements" on this issue are "insufficient" to establish viable discrimination claims.[122] And while Plaintiffs suggest that they *deliberately* kept their allegations vague to "maintain professional relationships with their colleagues,"[123] their desire for comity is no excuse for their failure to plead plausible claims.

## VII. Plaintiffs Do Not Allege Plausible Retaliation Claims.

Plaintiffs' retaliation arguments fail for five reasons. First, they are premised on this Court finding a material difference between their § 1981 retaliation claims and their dismissed Title VII retaliation claims.[124] Yet Plaintiffs used nearly identical allegations to plead their § 1981 and Title VII retaliation claims,[125] and they previously argued these claims as an undifferentiated whole.[126] Plaintiffs cannot now say with a straight face that their § 1981 and Title VII retaliation claims are meaningfully distinct.

Second, Plaintiffs do not dispute Defendants' points that (1) the alleged pay, promotions, and endowment issues occurred both before and after Plaintiffs' protected complaints and (2) the "causation" element of a retaliation claim is usually lacking in this scenario.[127]

Third, Plaintiffs argue that the disbanding of the ERPCC was a retaliatory act

[122] *See Alexander v. Philip R. Taft Psy D & Assocs., P.L.L.C.*, 143 F.4th 569, 578 (5th Cir. 2025) (quotations omitted).
[123] ECF 32-2, 52.
[124] *Id.* at 66–69.
[125] *Compare* ROA.485, ¶¶ 221–23, *with* ROA.488, ¶¶ 239–41.
[126] ROA.1293–96.
[127] *See* ECF 27, 61; ECF 32-2, 66–69.

that satisfies causation via temporal proximity.[128] But this was not one of the "retaliatory" acts identified in their amended complaint.[129] Thus, it is irrelevant.

Fourth, Plaintiffs do not actually establish temporal proximity regarding the disbanding of the ERPCC. "[I]n measuring temporal proximity, only the first instance of protected activity is relevant."[130] Here, Plaintiffs' first discrimination complaint to Hartzell occurred "on or about August 3, 2020,"[131] and the ERPCC was disbanded "[i]n or about February 2021."[132] This is an approximately six-month gap. This Court has found far shorter periods insufficient to establish causation via temporal proximity.[133]

Finally, regarding Plaintiffs' newfound "distinct" equal protection claim, district courts in this circuit routinely find that "there is no such thing as a retaliation claim under the Equal Protection Clause."[134] At the least, qualified immunity would protect Hartzell as it was not clearly established that he could be liable for retaliation under the

---

[128] ECF 32-2, 67.
[129] *See* ROA.448–49, ¶¶ 3–4; ROA.485–86, ¶¶ 219–25; ROA.487, ¶¶ 236–43.
[130] *Decou-Snowton v. Jefferson Par.*, No. 24-30079, 2024 WL 4879466, at *7 (5th Cir. Nov. 25, 2024).
[131] ROA.463, ¶¶ 93–94. Plaintiffs acknowledge that Hartzell was appointed as Interim President in or around July 2020. ROA.462, ¶ 87. They allege no facts showing that he was aware of their prior discrimination complaints.
[132] ROA.464, ¶ 100.
[133] *See, e.g.*, *Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 884–85 (5th Cir. 2020) (two and a half months was insufficient); *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 398, 402 (5th Cir. 2012) (69 days was insufficient); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing with approval a Tenth Circuit case finding three months to be insufficient). To be clear, Plaintiffs' arguments would fail even if measured from the first filed OFCCP charge (Martinez, October 14, 2020), as there would still be a nearly four-month temporal gap. *See* ROA.496.
[134] *Cordova v. City of Mansfield*, No. CIVA 04-1499, 2006 WL 2513923, at *7 (W.D. La. Aug. 29, 2006); *see also, e.g.*, *Cox v. Scott Cnty. Sch. Dist.*, No. 3:18-CV-677-KHJ-LGI, 2021 WL 1207718, at *13 (S.D. Miss. Mar. 30, 2021); *Fisher v. Dallas Cnty.*, No. 3:12-CV-3604-D, 2014 WL 4797006, at *9 (N.D. Tex. Sept. 26, 2014).

Equal Protection Clause.

## VIII. Plaintiffs' Disparate Impact Claims Against Hartzell Should Be Dismissed.

Plaintiffs do not contest Defendants' arguments that their § 1981 disparate impact claims should be dismissed.[135] The same holds true for Plaintiffs' equal protection disparate impact claims as these also require a showing of *intentional* discrimination.[136]

## IX. Defendants Agree That This Court Should Not Reach Plaintiffs' Title VII Claims.

Defendants acknowledge Plaintiffs' cited precedent showing that, unlike other circuits, this Court does not recognize "pendent party interlocutory appellate jurisdiction."[137] Thus, Defendants agree that this Court should not reach Plaintiffs' Title VII claims against UT Austin.

## CONCLUSION

For the reasons above and in Defendants' opening brief, this Court should reverse the district court's denial of Defendants' motion to dismiss as to Plaintiffs' claims against Hartzell.

Date: October 15, 2025

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

[135] ECF 27, 61–62.
[136] *See Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 715.
[137] *See, e.g.*, *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 407 (5th Cir. 2007).

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ Todd Dickerson*
TODD A. DICKERSON
Attorney-in-Charge
Texas Bar No. 24118368
Todd.Dickerson@oag.texas.gov
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548-Capitol Station
Austin, Texas 78711-2548
(737) 228-7289
FAX: (512) 320-0667
**COUNSEL FOR DEFENDANTS-APPELLANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13: (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document is protected by OAG's CrowdStrike agent and is free of viruses.

*/s/ Todd Dickerson*

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,427 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Garamond, with 12-point for footnotes) using Microsoft Word (the same program used to calculate the word count).

*/s/ Todd Dickerson*